IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TAHITIAN NONI INTERNATIONAL,<br><br>    Plaintiff,<br><br><br><br>vs.<br><br><br><br>ROBERT L. DEAN, JR, TOP GUN INTERNATIONAL, HERSCHEL GIBBS, BRIDGES INTERNATIONAL, DONNA ALLEN, PREPROSPER INC, and NONI MATTERS,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br><br><br><br><br>Case No. 2:09-CV-51 TS |

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction against Defendants Dean and Top Gun International ("Top Gun"), filed originally in the Utah Fourth District Court on January 13, 2009. Plaintiff's Motion for Temporary Restraining Order was granted, ex parte, by the state court on January 13, 2009, and was to expire on January 23, 2009 at 2:15 p.m. The case was removed to this Court on January 21, 2009,[1] based on diversity jurisdiction. Federal law provides that the temporary restraining order ("TRO") issued

---

[1] Docket No. 1.

1

by the state court remains in effect after removal until it expires or until dissolved by the Court.[2] Furthermore, federal law requires that the Court apply federal procedural rules in any further ruling on the motion.[3]

Fed. R. Civ. P. 65(b)(3) states that when, as here, a party has obtained an ex parte TRO, that party must proceed with the motion for a preliminary injunction and, if they do not, the Court must dissolve the TRO. As applied to the case before the Court, that means that the Plaintiff, having obtained their TRO ex parte, must proceed with their motion for a preliminary injunction and bears the burden of proof in any proceeding. In an attempt to accommodate the expiration deadline for the previously issued TRO, the Court held oral arguments on the Motion for Preliminary Injunction on January 23, 2009, at 9:00 a.m. After careful consideration of oral arguments and written submissions by all parties, the Court finds that Plaintiff has met its burden in establishing the requirements for injunctive relief, in part, and the Motion for Preliminary Injunction will be granted in part and denied in part.

## I. STANDARD OF REVIEW

The Tenth Circuit has stated that "[a] preliminary injunction is an extraordinary remedy, and thus the right to relief must be clear and unequivocal."[4] Plaintiff must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing

---

[2] 28 U.S.C. § 1450.

[3] *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 437 (1974).

[4] *Nova Health Systems v. Edmondson*, 460 F.3d 1295, 1298 (10th Cir. 2006).

party; and (4) the injunction, if issued, will not adversely affect the public interest.[5] If Plaintiff can satisfy the last three requirements, the standard for meeting the first requirement becomes more lenient.[6]

## II. FACTUAL BACKGROUND

The following facts are taken from the parties' written submissions. Plaintiff is a corporation which sells nutritional supplements made, primarily, from a tropical fruit known commonly as the Noni fruit. Defendant Dean began working for Plaintiff as an Independent Product Consultant ("IPC") in 2001. Defendant Top Gun is a corporation operated by Dean in order to further his business in the network marketing industry. Dean signed annual employment contracts with Plaintiff, the most recent being signed mid-2008 (the "IPC Agreement"), and which is set to expire within a year.

The IPC Agreement incorporated the Tahitian Noni International Policy Manual and Compensation Plan (the "Manual"), which was distributed to all IPCs. Section A of the Manual, subsection 10.B. states:

> During the term of their contract with TNI and for one year thereafter, IPCs may not promote or sell any non-Tahitian Noni® brand ingestible or topical products derived from the *Morinda citrifolia* plant. IPCs may not promote or sell any non-Tahitian Noni® brand liquid dietary supplement without prior written approval from TNI.[7]

The first sentence comprises the only non-compete clause in the Manual.

On December 18, 2008, Plaintiff and Dean met to discuss Dean's concerns regarding compensation. As a result of that meeting, Plaintiff and Dean signed an agreement (the "December

---

[5] *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

[6] *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1199 (10th Cir. 1992).

[7] Tahitian Noni International Policy Manual and Compensation Plan, Section A.10.B.

3

Agreement") which, among other things, promised $2,500,000.00 to Dean (the "Cash Award"). In return, Dean promised to remain with Plaintiff for three years. Paragraphs 6 and 10 of the December Agreement reads as follows:

> 6. <u>Non-Competition.</u>  In exchange for the substantial monetary benefits provided by TNI herein, Top Gun agrees, for a period of the earlier of (i) three (3) years or (ii) until the month end at which the Top Gun Leaders' total actual monthly commissions exceed their total guaranteed commissions under Section 3 of this Agreement, to remain a TNI IPC and to focus solely on the TNI opportunity and not to entertain, explore, sign up for, work for, or promote any other network marketing opportunity or business.  Top Gun agrees further to use its best efforts to encourate its Top Gun Leaders and the other IPCs in its group, including MAD Team, to remain with TNI during this non-competition period.
>
> 10. <u>Remedy in Case of Breach.</u>  In the event Top Gun breaches this Agreement, TNI will have the right to recoup the Cash Award paid to Top Gun, plus other material damages suffered by TNI as a result of the breach.  In the event of a material breach of this Agreement by TNI, Top Gun will be released from its obligation to remain as a TNI IPC and focus its efforts on the TNI business.

Paragraph 11 of the December Agreement requires both parties to maintain confidentiality regarding certain provisions of the December Agreement and provides that either party may obtain injunctive relief as a result of a breach of Paragraph 11.

On December 19, 2008, Dean demanded an advance on the Cash Award in the amount of $100,000.00. Plaintiffs complied, depositing the funds into Dean's bank account. Within a short time of receiving the funds, Dean announced that he was working for and promoting one of Plaintiff's competitors (the "Competitor"). Dean also began actively soliciting members of his downline to end their relationship with TNI and join the Competitor.

Plaintiff alleges that Dean is in breach of the December Agreement and the IPC Agreement. That breach, they allege, is causing Plaintiff to suffer monetary damages and "immediate and

irreparable harm to its reputation and goodwill."[8]  Plaintiff requests that the Court issue a Preliminary Injunction prohibiting Dean and Top Gun from promoting the Competitor or any other network marketing company.  Defendants respond that Plaintiff has failed to establish necessary elements for a Preliminary Injunction.

### III.  DISCUSSION

Two provisions arguably support issuance of a Preliminary Injunction enjoining Dean and Top Gun from promoting the Competitor–Section A.10.B. of the Manual, or Paragraph 6 of the December Agreement.  The scope of the provisions differ greatly, so the Court will consider each provision separately for its sufficiency under Fed. R. Civ. P. 65.

A.    DECEMBER AGREEMENT PROVISIONS

As an initial matter, the Court finds that the language of Paragraph 6 of the December Agreement is ambiguous, susceptible of three possible interpretations.  First, Paragraph 6 can be interpreted as an employment contract wherein Dean could not work for another network marketing company simultaneous to his employment with Plaintiff.  Second, Paragraph 6 can be interpreted as an employment contract wherein Dean promised to work for Plaintiff for three years, but if he was not working for Plaintiff, he would not work for any other network marketing company.  Third, Paragraph 6 can be interpreted as a non-competition clause wherein Dean promised to work for Plaintiff for up to 3 years and promised that he would not take employment with any other network marketing company upon resigning from Plaintiff until that 3-year time period had passed.  Even assuming that the second or third interpretation is correct, Plaintiff has not shown it will prevail on the merits for the following reasons.

---

[8]Plaintiff's Mem. in Sup. of Mot. for Preliminary Injunction at 10.

      1.      *Substantial Likelihood of Success on the Merits*

Plaintiff seeks to enforce what is, essentially, a non-competition agreement. In order to have a substantial likelihood of success on the merits, Plaintiff must show that the non-competition clause is valid and enforceable, which requires that Plaintiff show that: (1) the clause must be supported by consideration; (2) no bad faith must have been shown in the negotiation of the contract; (3) the clause must be necessary to protect the goodwill of the business; and (4) the clause must be reasonable.[9] The Court finds that there is no substantial likelihood of success on the merits because Paragraph 6 of the December Agreement is not reasonable and that Paragraph 10 unambiguously provides the sole remedy for breach of the clause.

      a.      *Reasonableness of Paragraph 6*

Reasonableness of a non-competition clause is determined on a case-by-case basis.[10] "Of primary importance in the determination of reasonableness are the location and nature of the employer's clientele."[11] Paragraph 6 of the December Agreement is unreasonable because it is overbroad in both time, space, and content limitations. If Paragraph 6 were to be enforced, it would render Dean unable to work for any other network marketing companies for three years. Paragraph 6, by its terms, extends to the entire globe and extends to every network marketing company, whether or not their products are in direct competition with Plaintiff.

The expansive nature of Paragraph 6 is made worse by the three-year time span in which it would be effective. In the network marketing industry, individuals derive their income from their

---

[9]*System Concepts, Inc. v. Dixon*, 669 P.2d 421, 425-26 (Utah 1983).

[10]*System Concepts, Inc.*, 669 P.2d at 427.

[11]*Id.*

6

downline and requiring Dean to abandon the network marketing industry entirely for three years would effectively destroy his downline, as those individuals would be required to sign distributor contracts under someone else. In short, enforcement of Paragraph 6 would effectively destroy Dean's career in the industry of his choice, making it unreasonable.

Moreover, Paragraph 10 is unambiguous in declaring the single remedy available to Plaintiff in the event of a breach of the December Agreement. That remedy is the return of the Cash Award, only $100,000 of which has been distributed to Dean up to this point. Plaintiff argues that Paragraph 10 does not declare that return of the Cash Award is the exclusive remedy and that Plaintiff retains the right to pursue other remedies, including injunctive relief. However, two doctrines of interpretation preclude such a finding. First, the doctrine of *contra proferentem* requires the court to construe any ambiguities against the drafter.[12] Second, the doctrine of *inclusio unius est exclusio alterius*, requires that the Court consider the express inclusion of certain remedies to be an indication of the desire to exclude all others.[13] Paragraph 11 identifies only injunctive relief as a remedy for violations of the confidentiality provisions of the December Agreement. That Plaintiff considered injunctive relief while drafting the December Agreement is clear, and the failure to include injunctive relief within Paragraph 6 would preclude this Court from awarding injunctive relief.

    2.    *Irreparable Harm*

The Court finds that Plaintiff has failed to show that it will suffer irreparable harm if the Preliminary Injunction is not issued. Plaintiff represented to the Court during oral arguments that Dean's exit will likely reduce Plaintiff's revenues by approximately 3%. "A showing of irreparable

---

[12]*See, e.g.*, *Kellogg v. Metropolitan Life Ins. Co.*, 549 F.3d 818, 830 (10th Cir. 2008). Plaintiff concedes that it drafted the December Agreement.

[13]*See, e.g.*, *New Jersey v. Delaware*, 128 S.Ct. 1410, 1433 (2008).

harm requires that the injury be both certain and great . . . and that it must not be merely serious or substantial."[14] While not insubstantial, the Court finds that the harm to Plaintiffs is not "certain and great." Moreover, economic harm such as lost revenues does not, in and of itself, constitute irreparable harm.[15]

Plaintiffs argue, however, that the harm caused by loss of IPCs represents irreparable harm to the Plaintiff's good will, and refers the Court to its Preliminary Injunction issued in *Agel Enterprises, LLC v. Schroeder*.[16] That case, however, is distinguishable. The plaintiff in *Agel* alleged that the defendant was engaged in the use of trade secrets and other proprietary information in order to recruit IPCs, an allegation which is not present in this case. The disruption to Plaintiff's business in this case is the result of Defendant choosing to leave and expressing publicly his reasons for leaving and joining the Competitor. The judicial function does not include protecting litigants from lawful competition. As the harm potentially suffered by Plaintiff is neither great nor certain, this element weighs against the issuance of a Preliminary Injunction.

3.   *Balancing of the Harms*

The Court also finds that the potential harm to Dean and Top Gun of granting the Preliminary Injunction outweighs the potential harm to Plaintiff if the Preliminary Injunction is not granted. As noted above, prohibiting Dean for working in the network marketing industry for three years would essentially end Dean's career in network marketing. Granting a Preliminary Injunction based on Paragraph 6 could, if kept in place during an extended trial, lead to the same conclusion to Dean's

---

[14] *Prarie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001).

[15] *Port City Properties v. Union Pac. R. Co.*, 518 F.3d 1186, 1190 (10th Cir. 2008).

[16] Case No. 2:08-CV-673 TS, Docket No. 44.

career. Failure to grant the Preliminary Injunction, however, may lead to damages to Plaintiff, but they may be recovered as damages for the alleged breach of contract by Defendants. Therefore, this element weighs against issuance of the Preliminary Injunction.

4. *Public Policy Concerns*

As a general rule, the Court finds that public policy supports competition. This element is neutral. However, because the remaining elements weigh heavily against the issuance of a Preliminary Injunction, Plaintiff's Motion for Preliminary Injunction based on Paragraph 6 of the December Agreement will be denied.

B. IPC AGREEMENT PROVISIONS

Section A.10.B. of the Manual prohibit certain actions by Plaintiff's IPCs. Specifically, it prohibits IPCs from working for or promoting Plaintiff's competitors while working as an IPC for Plaintiff. The evidence presently before the Court indicates that Dean is still an IPC for Plaintiff, even though he is engaged in promoting the Competitor. Dean argues that Plaintiff has suspended him and that suspension is equivalent to termination. However, the Manual states that Plaintiff may suspend Dean "for violating the terms of [the IPC Agreement] or the policies and procedures outlined in [the Manual] . . . ." and that "[s]uspension may or may not lead to termination of the IPC account, as determined by [Plaintiff] at its sole discretion."[17] The Court therefore finds that Dean is still an IPC for Plaintiff and is still subject to the prohibitions on promotion of any of Plaintiff's competitors.

The Court finds that there is a substantial likelihood of success on the merits, based on Section A.10.B. of the Manual. The Court also finds that Dean's promotion of a competitor's

---

[17]Tahitian Noni International Policy Manual and Compensation Plan, Section D.1.C.

product while still employed by Plaintiff is causing irreparable harm to Plaintiff's goodwill.  The parties represent that the IPC Agreement expires in May 2009, only four months away.  The evidence presently before the Court indicates that Dean has taken no actions to terminate the IPC Agreement prematurely, so that his continued work for Plaintiff is entirely his own responsibility.  Finally, the Court finds that there are no public policy arguments against issuance of a Preliminary Injunction based solely on Section A.10.B. of the Manual.

## IV.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for a Preliminary Injunction is GRANTED in part and DENIED in part.  The Injunction is as follows:

1. During the term of the contract IPC contract between Robert L. Dean, Jr. and Tahitian Noni International, Inc., and for one year thereafter, Robert L. Dean, Jr. and Top Dog International shall not promote or sell any non-Tahitian Noni® brand ingestible or topical products derived from the *Morinda citrifolia* plant.

2. Until such time as Robert L. Dean, Jr. ceases to be an IPC for Tahitian Noni International, Inc., Robert L. Dean, Jr. and Top Dog International shall not promote or sell any non-Tahitian Noni® brand liquid dietary supplement without prior written approval from Tahitian Noni International, Inc.

3. Plaintiff shall post a bond in the amount of $10,000.00.  This Preliminary Injunction shall become effective immediately upon posting the bond.

DATED   January 26, 2009.

                        BY THE COURT:

                        _____
                        TED STEWART
                        United States District Judge